**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Remaining Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered) |
| WOODBRIDGE LIQUIDATION TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>AARON R. ANDREW; PARAMOUNT FINANCIAL SERVICES, INC., D/B/A LIVE ABUNDANT,<br><br>Defendants. | Adversary Proceeding<br>Case No. 19-__________ (KJC) |

**COMPLAINT OBJECTING TO CLAIMS AND COUNTERCLAIMING FOR AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS AND FOR EQUITABLE SUBORDINATION**

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.

The Woodbridge Liquidation Trust (the "Liquidation Trust" or "Plaintiff") formed pursuant to the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* dated August 22, 2018 (Bankr. Docket No. 2397) (as it may be amended, modified, supplemented, or restated from time to time, the "Plan"[2]), as and for its *Complaint Objecting to Claims and Counterclaiming for Avoidance and Recovery of Avoidable Transfers and for Equitable Subordination* (this "Complaint") against Aaron R. Andrew ("Andrew") and Paramount Financial Services, Inc., d/b/a Live Abundant ("Paramount Financial" and, together with Andrew, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. At least since August 2012 until shortly before they sought bankruptcy protection, Woodbridge Group of Companies, LLC and its many hundreds of debtor affiliates (collectively, the "Debtors") were operated by their founder and principal, Robert Shapiro ("Shapiro"), as a Ponzi scheme. As part of this fraud, Shapiro utilized the Debtors to raise over one billion dollars from approximately 10,000 investors as either Noteholders or Unitholders (collectively, "Investors").

2. Those Investors often placed a substantial percentage of their net worth (including savings and retirement accounts) with the Debtors and now stand to lose a significant portion of their investments and to be delayed in the return of the remaining portion. The quality of the Investors' lives will likely be substantially and adversely affected by the fraud perpetrated by Shapiro.

3. Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties. In reality, these statements were lies. Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, there was no stream of payments, Investors' money was commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more notes and units to investors), and payment of principal and interest to existing investors. The money that was used to acquire property (almost always owned by a disguised affiliate) cannot be traced to any specific Investor. These are typical characteristics of Ponzi schemes.

4. Because the Debtors operated as a Ponzi scheme, obtaining new money from Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each new investment was a net negative. Money was siphoned off to pay the expenses described above, so that the Debtors actually received only a fraction of the investment dollars. New money also perpetuated the Ponzi scheme, enabling the Debtors to return fictitious profits to early Investors; in the absence of new investment, the house of cards would fall (as it eventually did). At the same time, each investment created an obligation to return to the defrauded Investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

5. The purpose of this lawsuit is (i) to object to the Claims (defined below) so that Andrew is not further compensated at the expense of legitimate creditors for activities that advanced the Ponzi scheme and further drove the Debtors into insolvency, (ii) to recover monies previously paid to Defendants by reason of these activities or as fictitious profits on Andrew's

Claim, and (iii) to the extent the Claim, or any new or amended claims, survive, to equitably subordinate them.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (C), (F), and (H). In any event, Plaintiff consents to entry of final orders or judgment by this Court. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

***The Liquidation Trust***

7. On December 4, 2017 (the "Initial Petition Date"), certain of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code. Other of the Debtors also filed voluntary chapter 11 cases either on the Initial Petition Date or within the following four months (collectively, the "Bankruptcy Cases").

8. On October 26, 2018, this Court entered an order confirming the Plan (Bankr. Docket No. 2903).

9. The Plan provides for, *inter alia*, the establishment of a the Liquidation Trust on the Effective Date of the Plan for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement. *See* Plan §§ 1.75, 5.4.

10. The Effective Date of the Plan occurred on February 15, 2019.

11. On February 25, 2019, the Court entered an order closing the Bankruptcy Cases of all Debtors except Woodbridge Group of Companies, LLC and Woodbridge Mortgage

Investment Fund 1, LLC (together, the "Remaining Debtors"). The Remaining Debtors' Bankruptcy Cases are being jointly administered under Case No. 17-12560 (KJC).

12. On the Effective Date, the Liquidation Trust was automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets. *See* Plan § 5.4.3. Further, the Liquidation Trust, as successor in interest to the Debtors, has the right and power to file and pursue any and all Liquidation Trust Actions without any further order of the Bankruptcy Court. *Id.* § 5.4.15. "Liquidation Trust Actions" include, *inter alia*, "all Avoidance Actions and Causes of Action held by the Debtors or the Estates . . . ." *Id.* § 1.76.

***Defendants***

13. Andrew is an individual residing in Holladay, Utah.

14. Paramount Financial is a Utah corporation. Andrew is a Supervisory Producer at Paramount Financial. On information and belief, Andrew owns and/or controls Paramount Financial.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

15. Andrew filed Proof of Claim Nos. 9219, 9220, and 9221 (collectively, the "Claims") against the Debtors, each in the amount of $25,000. The Claims are based on Notes held by Andrew. Andrew asserts that the Claims are fully secured.

16. Defendants engaged in activities that generated investments in the Debtors. Paramount Financial is or was in the business of selling investment products, including the Debtors' Notes and/or Units, to retail investors. Andrew, either individually or through Paramount Financial, solicited and sold Notes and/or Units to investors. Defendants received commission payments from the Debtors on account of Notes and/or Units sold to investors.

17. Plaintiff is informed and believes and thereupon alleges that within the 90 days preceding the relevant transferor's petition date, Andrew received Prepetition Distributions of fictitious profits from the Ponzi scheme in respect of the Claims totaling not less than the amount set forth on Exhibit 1 hereto (the "90 Day Transfers"). The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 1.

18. Plaintiff is informed and believes and thereupon alleges that within the two years preceding the Initial Petition Date, Defendants received transfers totaling not less than the amount set forth on Exhibit 2 hereto (the "Two Year Transfers"), including commission payments and, in the case of Andrew, Prepetition Distributions from the Ponzi scheme in respect of the Claims. The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 2. The Two Year Transfers are inclusive of the 90 Day Transfers, but Plaintiff does not seek to recover the same sum more than once.

19. Plaintiff is informed and believes and thereupon alleges that within the four years preceding the Initial Petition Date, Defendants received transfers totaling not less than the amount set forth on Exhibit 3 hereto (the "Four Year Transfers" and, collectively with the 90 Day Transfers and the Two Year Transfers, the "Transfers"), including commission payments and, in the case of Andrew, Prepetition Distributions of fictitious profits from the Ponzi scheme in respect of the Claims. The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 3. The Four Year Transfers are inclusive of the 90 Day Transfers and the Two Year Transfers, but Plaintiff does not seek to recover the same sum more than once.

**<u>FIRST CLAIM FOR RELIEF (AGAINST ANDREW ONLY)</u>**

**Avoidance and Recovery of Preferential Transfers**

20. Plaintiff realleges and incorporates herein Paragraphs 1 through 19, as if fully set forth herein.

21. The 90 Day Transfers constituted transfers of the Debtors' property.

22. The 90 Day Transfers were made to or for the benefit of Andrew on account of an antecedent debt and while the Debtors were insolvent. The affirmative assertion that the Debtors were insolvent at the times of the 90 Day Transfers is not intended and does not shift the burden of proof or alter the presumption of insolvency provided by Bankruptcy Code section 547(f).

23. By virtue of the 90 Day Transfers, Andrew received more than he would have received if the 90 Day Transfers had not been made and Andrew received a distribution pursuant to a chapter 7 liquidation.

24. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 547(b), 550(a), and 551: (a) avoiding the 90 Day Transfers free and clear of any interest of Andrew, (b) directing that the 90 Day Transfers be set aside, and (c) recovering the 90 Day Transfers or the value thereof from Andrew for the benefit of the Liquidation Trust.

**<u>SECOND CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)</u>**

**Avoidance and Recovery of Actual Intent Fraudulent Transfers – Bankruptcy Code**

25. Plaintiff realleges and incorporates herein Paragraphs 1 through 19, as if fully set forth herein.

26. The Two Year Transfers constituted transfers of the Debtors' property.

27. The Two Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as either (i) the services to be provided in exchange for such transfers would perpetuate a Ponzi scheme, or (ii) such transfers were prepetition distributions of fictitious profits from the Ponzi scheme in respect of the Claims.

28. The Two Year Transfers were made to or for the benefit of Defendants.

29. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

**THIRD CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**

**Avoidance and Recovery of Constructive Fraudulent Transfers – Bankruptcy Code**

30. Plaintiff realleges and incorporates herein Paragraphs 1 through 19, as if fully set forth herein.

31. The Two Year Transfers constituted transfers of the Debtors' property.

32. The Two Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that Debtors would incur, debts beyond their ability to pay as such debts matured.

33. The Two Year Transfers were made to or for the benefit of Defendants.

34. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and

clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

**FOURTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**

**Avoidance and Recovery of Actual Intent Voidable Transactions – State Law**

35. Plaintiff realleges and incorporates herein Paragraphs 1 through 19, as if fully set forth herein.

36. The Four Year Transfers constituted transfers of the Debtors' property.

37. The Four Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as either (i) the services to be provided in exchange for such transfers would perpetuate a Ponzi scheme, or (ii) such transfers were prepetition distributions of fictitious profits from the Ponzi scheme in respect of the Claims.

38. The Four Year Transfers were made to or for the benefit of Defendants.

39. Debtors that made one or more of the Four Year Transfers has at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

40. The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(1) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

41. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and

clear of any claimed interest of Defendants, (b) directing that the Four Year Transfers be set aside, and (c) recovering such Four Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

**FIFTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**

**Avoidance and Recovery of Constructive Voidable Transactions – State Law**

42. Plaintiff realleges and incorporates herein Paragraphs 1 through 19, as if fully set forth herein.

43. The Four Year Transfers constituted transfers of the Debtors' property.

44. The Four Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or was about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that it would incur, debts beyond their ability to pay as such debts matured.

45. The Four Year Transfers were made to or for the benefit of Defendants.

46. At the times of, and/or subsequent to, each of the Four Year Transfers, each Debtor that made one or more of the Four Year Transfers has at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

47. The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(2) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

48. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Four Year Transfers be set aside, and (c) recovering such Four Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

**SIXTH CLAIM FOR RELIEF (AGAINST ANDREW ONLY)**

**Objection to Claims (Bankruptcy Code Section 502(d))**

49. Plaintiff realleges and incorporates herein Paragraphs 1 through 48, as if fully set forth herein.

50. The Claims are not allowable because:

a. Andrew has received property, *i.e.*, the Transfers, recoverable under Bankruptcy Code section 550; and/or

b. Andrew has received a transfer, *i.e.*, the Transfers, avoidable under Bankruptcy Code section 544, 547, or 548.

51. In either event, the Claims must be disallowed under Bankruptcy Code section 502(d) unless and until Andrew has fully repaid the amount, or turned over any such property, for which Andrew is liable under Bankruptcy Code section 550.

**SEVENTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**

**Equitable Subordination of Claims**

52. Plaintiff realleges and incorporates herein Paragraphs 1 through 19, as if fully set forth herein.

53. By providing services that helped perpetuate a Ponzi scheme, Defendants engaged in inequitable conduct.

54. Defendants' inequitable conduct has resulted in injury to the Debtors' estates and their other creditors and/or has conferred an unfair advantage on Defendants.

55. Principles of equitable subordination require that any claims asserted by Defendants be equitably subordinated to all other claims against the Debtors.

56. Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

57. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code section 510(c) equitably subordinating any and all claims that Defendants may assert against any of the Debtors, whatever the origin of those claims, including, without limitation, the Claims and any claims that may be asserted under Bankruptcy Code section 502(h), to all other claims against the Debtors.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff requests that the Court enter judgment:

**(1)** On the first claim for relief, (a) avoiding the 90 Day Transfers free and clear of any interest of Andrew, (b) directing that the 90 Day Transfers be set aside, and (c) ordering Andrew to pay to Plaintiff the amount of the 90 Day Transfers;

**(2)** On the second and third claims for relief, (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) ordering Defendants to pay to Plaintiff the amount of the Two Year Transfers; provided, however, that Paramount Financial shall not be liable for any Transfers that are Prepetition Distributions to Andrew;

**(3)** On the fourth and fifth claims for relief, (a) avoiding the Four Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Four Year Transfers be set aside, and (c) ordering Defendants to pay to Plaintiff the amount of the Four Year Transfers; provided, however, that Paramount Financial shall not be liable for any Transfers that are Prepetition Distributions to Andrew;

**(4)** On the sixth claim for relief, sustaining the objection to the Claims, decreeing that Andrew take nothing thereon, and directing the Claims Agent to strike Claim Nos. 9219, 9220, and 9221 from the official Claims Register;

**(5)** On the seventh claim for relief, equitably subordinating any and all claims that Defendants may assert against any of the Debtors or their estates, whatever the origin of those claims, including, without limitation, the Claim and any claims that may be asserted under Bankruptcy Code section 502(h), to all other claims against the Debtors or their estates; and

**(6)** On all claims for relief, awarding Plaintiff prejudgment interest as permitted by law, costs of suit, and such other and further relief as is just and proper.

Dated: March 29, 2019
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
Richard M. Pachulski (CA Bar No. 90073)
Andrew W. Caine (CA Bar No. 110345)
Bradford J. Sandler (DE Bar No. 4142)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-4100
Fax: 302-652-4400
Email: rpachulski@pszjlaw.com
acaine@pszjlaw.com
bsandler@pszjlaw.com
crobinson@pszjlaw.com

-and-

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee (*pro hac vice*)
Michael L. Tuchin (*pro hac vice*)
David A. Fidler (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Tel: (310) 407-4000
Fax: (310) 407-9090

*Counsel to the Liquidation Trust*